(No. 35802.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LUTHER McCOY, Plaintiff in Error.

*Opinion filed September 22, 1961.*

SAMUEL NINEBERG, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER, MARVIN E. ASPEN and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Luther McCoy, was convicted in the criminal court of Cook County of unlawful possession of narcotics and sentenced to a term of not less than two nor more than ten years in the penitentiary. Upon his trial he was represented by the public defender, who moved to suppress the packages of narcotics that had been found by police officers in the defendant's apartment, upon the ground that they had been obtained by an illegal search and seizure. The motion was denied. The prosecution introduced as exhibits the packages of narcotics and the defendant's written confession, together with the testimony of two police officers, and the defendant was found guilty.

On this writ of error, he argues that it was error to deny his motion to suppress the packages of narcotics that were found in his apartment, that his written confession was involuntary and should not have been admitted in evidence, and that the public defender so incompetently repre-

sented him in the trial court that he was deprived of a fair trial.

It is admitted that police officers searched the defendant's apartment and found 13 packages of heroin, but the testimony is conflicting as to the circumstances under which the search was made. The defendant testified that the officers came to his door, and that when he opened it they "collared" him and pushed him into the apartment. They told him that they had a search warrant, but refused to let him see it. Later, at the police station, one of the officers showed him a piece of paper and said it was the search warrant, but refused to let him read it. His testimony was substantiated by that of William Porter, who was arrested in the apartment with him.

One of the arresting officers testified that the search warrant was handed to the defendant when the police entered the apartment, that the defendant read it and commented that they even had his nicknames correctly stated. The search warrant was produced at the outset of the trial, and it appeared that the return, which showed the execution of the warrant, was not dated. Upon the testimony of one of the arresting officers that the warrant was executed on the same day that it was dated, December 16, 1958, the return was amended by inserting that date. We see no prejudice to the defendant in this ruling. The conflicting testimony upon the motion to suppress required the trial judge to determine the credibility of the witnesses, and we can not say that he erred in overruling the motion.

Defendant's confession admitted that the narcotics found in the apartment belonged to him. We have carefully examined the testimony relating to his claim that his confession was coerced, and it is our opinion that the trial judge properly denied the claim. The defendant testified that he "was abused with brute force," and specifically that a police officer struck him two or three times in the stomach and "three or four times beside my head." Porter testified

that he saw this occurrence. The defendant also testified that the same officer later punched him in the stomach three or four more times, and told him that if he did not sign a statement he wouldn't go to court the next morning because he wouldn't be able to. He testified that the officer asked "Whose stuff is it?" while he was punching him.

The defendant first testified that the officer who punched him was one that he had never seen before, and that he had not seen that officer in the courtroom at the trial. Later he testified that the officer who struck him was the officer that drove him to the station after the arrest. Some of those arrested were taken to the police station in a patrol wagon, and others in officer McNealy's car. The defendant, Porter and officer Patch all testified that the defendant was taken in the private car; McNealy was not certain. McNealy and Patch both testified that Patch drove the car. The defendant and Porter denied that he did. Porter then testified that an officer who had been in court earlier in the day was the man who had driven the car, and the defendant said that he knew who that officer was and that his name was Carl Henry.

Within a short space of time the defendant thus testified first that he had never previously seen the officer who struck him, and that he had not seen that officer in court. Then he shifted to the assertion that an officer whom he had seen previously,—the officer that drove him to the police station —was the man who struck him. When there was testimony that officer Patch had driven the car, he shifted again, this time to an officer whose name he knew, and one whom he had seen in court. These discrepancies and self-contradictions were sufficient to justify the trial judge in denying the motion to suppress the confession.

Defendant's objections to the competency of his counsel are insubstantial. It was certainly not improper for him to waive a reading of the indictment, and the fact that an oral rather than a written motion to suppress was made is of no

554

consequence because there was a full hearing on the motion. Competent representation did not require the defendant's attorney to offer the search warrant in evidence. Nor is incompetence shown by the fact that defendant's attorney did not present to the trial court certain arguments now suggested by the defendant.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*